No. 5580.

A. W. MONTGOMERY v. THE STATE.

THEFT—EVIDENCE.—See the opinion *in extenso* for evidence in a theft case
*held* inadmissible as hearsay, and, in view of the remaining proof in the
case, to constitute such material error as to necessitate a reversal of the
conviction.

APPEAL from the District Court of San Saba. Tried below be-
fore the Hon. A. W. Moursund.

 This was a conviction for the theft of a horse, the property of
W. Caviness, and the penalty assessed was a term of five years
in the penitentiary.

William Caviness was the first witness for the State, and by
him the State established the disappearance of the horse from
the range, his subsequent recovery upon the same range, with
his brand altered and other brands on him, and the confessions
of Lee Hext and Williams that they had used the horse, and, in
addition, the facts stated in the opinion of the court.

Lee Hext testified, for the State, in substance, that he knew
the horse described in the indictment. On or about Feb-
ruary 15, 1884, witness saw that horse in the possession of the
defendant. Defendant, then on his way to Nolan county, was
riding one horse and leading the Caviness horse. Witness told
him that Caviness owned the horse, but defendant said nothing
in reply. On his return home from San Saba town, witness sent
Caviness word that he had better look after his horse, as it was
either then in Nolan county or on the way to that county. Wit-
ness acknowledged that he rode the Caviness horse once with-
out the permission of Caviness. He rode him about half a mile
and left him hobbled where and as he found him. Witness de-
nied that he traded the said horse to defendant for a silver
watch and a pair of leather leggins, or that he ever told Hugh
Barber or anybody else that he made such a trade with defend-
ant. The silver watch owned by the witness was won by him
from the defendant at a game of cards. Witness denied that
he ever wrote defendant a letter about the horse, or that he ever
told Hugh Barber that he had written a letter to defendant tell-

ing him to keep quiet, and that he, witness, would make the horse matter all right, or that he ever sent such a message to defendant by Hugh Barber.

The State closed.

M. L. Montgomery, the defendant's father, was the first witness for the defense. He testified that the State's witness, Lee Hext, was his nephew, and was about his place in San Saba county a great deal during the months of January, February and March, 1884. During the first of those months Hext brought a small black or brown pony to witness's house. The pony was in a "burned" brand. If it had Mr. Caviness's brand on it, it was burned over. Hext cared for and attended to that horse, watered, fed and staked him out, and rode him. Witness was not present, and did not witness a trade between defendant and Hext, when Hext gave the defendant the horse for a silver watch and leggins, but he saw the defendant in possession of the horse and Hext in possession of the watch and leggins. Witness was at home when defendant started to Nolan county, and knew that he took that little black or brown pony with him. Witness was at home when Caviness came there to inquire about his horse, but did not tell Caviness that defendant had gone to Nolan county, and had taken with him a horse he did not own. The brands on the horse were "burned" when Hext had him, and when defendant took him off, and also when he was brought back from Nolan county. In the summer of 1886 witness got a letter out of the postoffice in Sweetwater, Nolan county, addressed to defendant, post marked "Bull Head." Witness knew from the handwriting and post mark that it was from some of the Hext boys, and opened and read it. The letter had since been partially destroyed by the ravages of mice upon the trunk in which it was kept, and the remainder, being only the letter head and superscription, had been lost. The letter was signed "Lee Hext," and stated, in substance, that the writer had learned that old George Gray was raising h—ll about the horse; that he was afraid of Gray, but not of Caviness; and it advised defendant to be quiet about the horse, and promised to make it all right.

Mrs. M. L. Montgomery, testifying for the defense, described the horse in question as her husband did, and stated that she was present in her kitchen one evening in January, 1884, and saw Lee Hext trade that horse to defendant for a silver watch and a pair of leggins.

Martin Montgomery, the defendant's brother, corroborated his father, in his brother's behalf, and stated, in addition, that both defendant and Hext told him of the trade of the horse for the watch and leggins. Witness went to Nolan county and brought the horse back and turned him upon the range. The witness stated nothing about the letter described by his father.

Dick Montgomery, a brother of the defendant, testified that he saw the horse in question in Lee Hext's possession before the burned brand was put on. It was then in Caviness's brand. Witness knew the horse to be in the brand of Caviness, but thought that Lee Hext owned it. He saw it afterwards with the Caviness brand burned over. He afterwards saw Hext in possession of defendant's watch and leggins.

G. W. Anderson testified for the State, in rebuttal, that in the winter and spring of 1883-4, Lee Hext boarded with him and went to school. During that time he, Hext, was at M. L. Montgomery's place but once that the witness ever heard of. He was often on the creek on Saturdays and Sundays, and may on such days have gone to Montgomery's. Witness never saw Lee Hext in possession of a horse, other than the sorrel one which he owned.

*Burleson & Harris,* for the appellant

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. Upon the trial, W. Caviness, the owner of the alleged stolen horse, testified, in behalf of the State, over the objections of defendant, as follows: "I went to M. L. Montgomery's house. Defendant was absent. Defendant's father, M. L. Montgomery, was present. I told him that his son had carried off my horse. He replied that he did not know, as he had been absent at his ranch all winter, and when he came back he found that the boys had been doing some dirty work; that he tried to break it up, and that he had turned out of the pasture some horses that had been burnt; that the defendant was not there, but had gone to Nolan county and had taken a horse with him that did not belong to him, and that he would try and get him back and send him to witness."

This testimony was clearly hearsay, and inadmissible, and was well calculated to prejudice the defendant in the minds of the jury. In view of the legal evidence in the case, the error of

admitting it can not be regarded as an immaterial one. It was an error for which the conviction must be set aside, and the disposition of the case upon this ground renders it unnecessary that we should determine other questions presented in the record.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*